**THE LAW OFFICES OF
HOWARD W. RUBINSTEIN, P.A.**
Benjamin M. Lopatin, Esq., State Bar No. 281730
*lopatin@hwrlawoffice.com*
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Tel: (800) 436-6437
Fax: (415) 692-6607

Attorney for Plaintiff Elizabeth Cox
and the Proposed Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ELIZABETH COX, as an individual, and on behalf of all others similarly situated,<br><br>      *Plaintiff,*<br><br><br>*vs.*<br><br><br><br>GRUMA CORPORATION, a Nevada corporation,<br><br>      *Defendant.* | Civil No.: 12-cv-06502-YGR<br><br>Judge: The Hon. Yvonne Gonzalez Rogers<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. VIOLATIONS OF CALIFORNIA CIVIL CODE §§ 1750, *ET SEQ* (CONSUMER LEGAL REMEDIES ACT)<br><br>2. VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.* (UNFAIR AND FRAUDULENT PRONGS OF THE UNFAIR COMPETITION LAW)<br><br>3. VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.* (UNLAWFUL PRONG OF THE UNFAIR COMPETITION LAW)<br><br>3. VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500, *ET SEQ.* (FALSE ADVERTISING LAW)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Elizabeth Cox ("Plaintiff"), individually, and on behalf of all other similarly situated purchasers of certain Mission® tortilla chips, by and through her undersigned counsel, submits this First Amended Complaint, against Defendant, Gruma Corporation ("Gruma" or "Defendant") pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and alleges as follows:

## **INTRODUCTION**

1.     Defendant Gruma markets, distributes and sells Mission® Restaurant Style Tortilla Rounds, Mission® Restaurant Style Tortilla Strips and Mission® Restaurant Style Tortilla Triangles (collectively, the "Products").

2.     In its marketing and advertising for the Products, Defendant made and continues to make false and misleading claims regarding the Products.

3.     In particular, Defendant represents the Products as "All Natural" The Products, but they are not all natural because they contain genetically modified corn ingredients. Genetically modified corn is not "All Natural" because it is grown from seeds that have been modified in a laboratory to contain genes and/or DNA that would not normally be in there. Thus, Defendant's "All Natural" claims are false, misleading and likely to deceive reasonable consumers.

4.     In the course of manufacturing, marketing, distributing and selling the Products, Defendant has committed and continues to commit illicit business practices in direct violation of: California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, California's Unfair Competition Act ("UCL") Business & Professions Code §§ 17200, *et seq.*, and California's False Advertising Law ("FAL") Business & Professions Code §§ 17500, *et seq*. This action seeks to put an end to Defendant's unfair, fraudulent and unlawful business practices.

## VENUE AND JURISDICTION

5.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members of the proposed class; (2) members of the proposed class have a different citizenship from Defendant; (3) the aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.

6.      This Court has jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through promotion, sale, marketing and distribution of the Products in California, to render the exercise of jurisdiction by this Court proper and necessary.  Moreover, Defendant can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, Plaintiff resides in San Francisco County, and Plaintiff purchased the subject product in San Francisco.

8.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject Product of this action in this judicial district.  The "Declaration of Benjamin M. Lopatin, Esq., Pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, Civil Code §§1750 et seq." regarding venue under the California Consumer Legal Remedies Act ("CLRA") was filed on December 21, 2012 [DE 5] and is incorporated herein by reference.

9. Plaintiff Elizabeth Cox is a resident of San Francisco, California who purchased the Products in California during the four (4) years prior to the filing of this complaint (the "Class Period"). Plaintiff respectfully requests a jury trial. Plaintiff purchased Gruma's All Natural Mission® Tortilla Triangles, Gruma's All Natural Mission® Restaurant Style Tortilla Rounds, and Gruma's All Natural Mission® Restaurant Style Tortilla Strips (collectively, the "Products") on multiple occasions for personal use during the Class Period. The last time she purchased the Products was in August 2012 from a Safeway Market located in San Francisco, California. In doing so, Plaintiff relied upon the advertising and other promotional material which were prepared and approved by Defendant and its agents and disseminated through its labeling and advertising media, containing the misrepresentation that the Products are "All Natural." She understood Defendant's statement that the Products were "All Natural" to mean they did not contain any GMO ingredients. Whether the Products contained GMO ingredients was important to the Plaintiff and she did not know the Products contained GMO ingredients, and had no reason to know. If Plaintiff had known the Products were not all natural she would not have purchased the Products, and would not have paid a premium price for them. Indeed, Plaintiff had other alternatives that lacked such GMO ingredients. Plaintiff also had cheaper alternatives.

10. Defendant Gruma Corporation is a wholly owned subsidiary of the Mexican food company Gruma, S.A.B. de C.v. and is its largest revenue producer. Defendant is the largest manufacturer of corn flour and tortillas in the world. Its brand names include Mission, Maseca and Guerrero. Defendant is incorporated in Nevada and maintains its principle place of business is 1159 Cottonwood Lane, Suite 200, Irving, Texas 75038. Therefore, Gruma can be considered

a "citizen" of the State of Nevada or Texas. Gruma lists with the California Secretary of State a Registered Agent designated as CSC, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income and through the State of California. Defendant is the registered trademark owner and distributor of the Mission® brand of tortilla chips, and is the company that created and/or authorized the false, misleading and deceptive advertisements and packaging for the Products.

11.     Plaintiff alleges that, at all relevant times, Defendant and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of Defendant, and at all relevant times, each acted within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were Gruma's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment. Whenever reference in this First Amended Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

12.     Additionally, Plaintiff alleges that, in committing the wrongful acts alleged herein, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce

members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and that Defendant participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

13.     Defendant, upon becoming involved with the manufacture, distribution, advertising, marketing and sale of the Products, knew or should have known that the claims about the Products, including the claims that the Products are "All Natural," were false, deceptive and misleading. Defendant also knew or should have known that the Products contain, and continue to contain, ingredients that have grown from seeds that were genetically modified in laboratories (in other words, that the ingredients are GMOs).   Defendant affirmatively misrepresented, and continues to misrepresent, the uses and benefits of the Products in order to convince the public to purchase and use the Products, resulting in millions of dollars in profits to Defendant, and significant detriment to the consuming public.

## FACTUAL ALLEGATIONS

A.     BACKGROUND

   (1)     Identical California and Federal Laws Regulate Food Labeling

14.     Food manufacturers are required to comply with federal and state laws and regulations that govern the labeling of food products. First and foremost among these is the Federal Food, Drug, and Cosmetic Act (FDCA) and its labeling regulations, including those set forth in 21 C.F.R. 101.

15.     California and federal law have placed similar requirements on food companies that are designed to ensure that the claims companies are making about their products to consumers are truthful and accurate.

16.     Pursuant to California's Sherman Food, Drug & Cosmetic Law (the "Sherman Act") California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code §§ 110100, *et seq*.

17.     In addition to its blanket adoption of federal labeling requirements, California has also enacted various laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, food products are misbranded under section 110660 of the Health & Safety Code if their labeling is false and misleading in one or more particulars.

18.     Similarly, under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it fails to contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

19.     In recent years, the Federal Drug Administration (FDA) has become increasingly concerned that food manufacturers were disregarding food labeling regulations. To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

20.     However, the FDA does not directly regulate the term "natural." Instead, the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is *not* natural if it contains color, artificial flavors or synthetic substances. *See* http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm, http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm. Specifically, the FDA states "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning

that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM199361.pdf.

21.     According to federal regulations, an ingredient is synthetic if it is "formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral source, except that such term shall not apply to substances created by naturally occurring biological processes." 7 § C.F.R. 205.2.

22.     Despite requests to the FDA from courts and trade members for a regulatory definition of "natural," however, the FDA has declined to do so because the time required to conduct a public hearing "would take two to three years to complete," and the agency's resources are "currently devoted to other, higher priorities. *See* letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries, et al., v. Hornell Brewing Co., Inc.,* Case NO. 10-1139 (N.D. Cal.), Docket No. 54, attached hereto as **Exhibit 1**.

23.     Federal law does not specifically require the regulation of genetically engineered foods. Although the U.S. Department of Agriculture (USDA) currently places some restrictions on the use of genetically engineered crops that are shown to harm other plants, and the FDA is responsible for ensuring that most foods additives are safe, there are no regulations or federal laws designed to handle the novel genetically engineered foods or to address the potential risks the GMOs may present.

24.     Instead, federal regulatory agencies are left to creatively interpret each statute, leaving a regulatory approach that is passive, not proactive, about GMO risks. For example, the FDA does not have mandatory genetic modification safety assessment processes, and has never

approved a genetically modified food as safe. The FDA has no mandatory or voluntary assessment program that that guarantees or attempts to investigate the safety of genetically modified food.

25. Likewise, California agencies are not required to regulate genetically engineered foods.

**(2)** **Genetically Modified Ingredients are Not "All Natural"**

26. The term "genetic modification" is recognized in "common usage and in national and international laws to refer to the use of recombinant DNA transfer techniques to transfer genetic material between organisms in a way that would not take place naturally, bringing about alterations in genetic makeup and properties." Michael Antoniou, Claire Robinson, and John Fagan. *GMO Myths and Truths: An Evidence-Based Examination of the Claims Made for the Safety and Efficacy of Genetically Modified Crops*. Earth Open Source. June 2012 at 10 (available at http://earthopensource.org/files/pdfs/GMO_Myths_and_Truths/GMO_Myths_and_Truths_1.3b.pdf).

27. The term "biotechnology is an umbrella term that includes a variety of processes in which biological functions are harnessed for various purposes." *Id.*

28. Genetically modified organisms ("GMOs") are plants that grow from seeds that have been modified in a laboratory through the genetic modification process. The experimental technology of genetic modification merges DNA from different species, creating unstable combinations of plant, animal, bacterial and viral genes that cannot occur in nature or in traditional crossbreeding. *See* http://www.nongmoproject.org/learn-more/.

29.     Contrary to Defendant's statements in its Motion to Dismiss, genetic modification "is completely different from natural breeding" because natural breeding "can only take place between closely related forms of life" and genetic modification "is a laboratory-based technique." *Id.* at 9.

30.     Furthermore, the unnatural process of inserting a genetically modified gene into the DNA of a plant cell is "crude, uncontrolled, and imprecise, and causes mutations – heritable changes – the plant's DNA blueprint." *Id.* at 11. During the genetic modification process "unintended, uncontrolled mutations occur" and "complex interactions occur at multiple levels within the organism as a result of the insertion of even a single new gene." *Id.* Thus, the "unintended changes could include alterations in the nutritional content of the food, toxic and allergenic effects, poor crop performance and generation of characteristics that harm the environment." *Id.* In contrast, "mutations occur infrequently in nature." *Id.* at 16.

31.     Since genetic engineering "is an artificial laboratory procedure that forcibly introduces foreign DNA into the cells of a plant[,]"  the resulting GMO cannot be considered "all natural." *Id.* at 18.

32.     To date, no reliable, scientific studies guarantee or show any evidence of long term safety of GMOs for human consumption.

**(3)     Increased Concern Over GMOs**

33.     There is an increasing concern amongst health experts and consumers alike that introducing foreign genes into food plants may have unexpected and negative impacts on human health, such as creating new allergens, causing allergic reactions in susceptible individuals, and causing digestive issues. Generally, the concerns about GMOs fall into three categories: environmental hazards, human health risks and economic concerns. Some concerns for human

health risks associated with GMOs include, but are not limited to, the possibility that introducing a new gene into a plant may create a new allergen, cause an allergic reaction in susceptible individuals or have an unexpected and negative impact on overall human health.

34.     Polls taken by the Pew Center, Consumers Union, Harris Interactive and ABC over the last decade that have consistently found that the vast majority of Americans would like to see genetically modified foods better regulated and labeled.  Eng, Monica. "Debate rages over labeling biotech foods; Industry resists listing genetically modified ingredients; consumer worries continue." L.A. Times.  June 2, 2011. BUSINESS; Business Desk; Part B; p. 4.

35.     Recently, a poll conducted from February 28, 2013 through March 1, 2013 by the Huffington Post in partnership with YouGov found that 82% of Americans want labels for GMO food. *See* http://www.huffingtonpost.com/2013/03/04/gmo-poll_n_2807595.html.

36.     Legislation requiring the labeling of GMOs has been proposed in more than a dozen states since 2011.  *See* Harmon & Pollack, Battle Brewing Over Labeling of Genetically Modified Food, N.Y. Times, Science, May 24, 2012, available at http://www.nytimes.com/2012/05/25/science/dispute-over-labeling-of-genetically-modified-food.html?_r=0. In California's November 2012 election, the passage of Proposition 37 would have prohibited retailers and food companies from labeling or advertising of food as "natural" if made from GMOs. *See* http://graphics.latimes.com/2012-election-results-california/. Although Proposition 37 did not pass, 47.2% of California voters voted "yes" and this continues to be an important consideration for California consumers when purchasing food products.

37.     Most recently, Whole Foods Market announced that by 2018, all products in its U.S. stores must be labeled if they contain GMOs. This is the first national grocery store to set a

deadline from GMO labeling. *See* http://www.prnewswire.com/news-releases/whole-foods-market-commits-to-full-gmo-transparency-196327171.html.

38.     Indeed, whether a packaged food item labeled "all natural" contains genetically modified ingredients is a material question to a reasonable consumer.

**B.     DEFENDANT'S "ALL NATURAL" CLAIMS ARE FALSE AND MISLEADING**

39.     Defendant Gruma manufactures, distributes, markets, advertises, and sells Mission® brand corn tortilla chips, which come in the following three (3) varieties:  Mission® Tortilla Triangles, Mission® Restaurant Style Tortilla Rounds, and Mission® Restaurant Style Tortilla Strips (the "Products").

40.     During the Class Period, Defendant has claimed, and continues to claim, in its advertising and marketing of the Products that the Products are "All Natural." Indeed, the front of every package displays the term "All Natural" in large, bold font. *See* **Exhibit 2** (true and correct copies of the exemplary packaging for the Products).

41.     Plaintiff did not know the Products contained GMOs at the various times she purchased them.  Plaintiff, by and through her attorneys, tested the Products for the presence of GMOs on or about January 18, 2013 and February 5, 2013.  The results of Plaintiff's testing confirm that the Products contain and are made from corn grown or created from genetically modified seeds. The corn itself is, therefore, a GMO.

42.     Since the seeds from which the corn ingredient contained in the Product has been genetically modified to add or include additional genes and/or DNA, the corn ingredients and the Products themselves are, therefore, not "All Natural."

43.     Thus, Defendant's "All Natural" statement prominently displayed on the Product's packaging is false, misleading, and likely to deceive reasonable consumers, such as

Plaintiff and members of the Class, because the Product is not "All Natural," due to the presence of GMO corn. The misbranded Products are not "All Natural" because a genetically modified corn product contains genes and/or DNA that would not normally be in them.

44.     Consumers such as Plaintiff expect that products labeled "All Natural" will be just that. To be all natural, a food should contain no artificial or synthetic ingredients and both it and its ingredients should have no more processing that something which could be made in a household kitchen. The average consumer cannot create a genetically modified organism, nor insert or change a plant seed's DNA, in her own household kitchen.  Clearly, an organism that has undergone sophisticated bioengineering can no longer be described as minimally processed.

## C.     RELIANCE ON GRUMA'S "ALL NATURAL" CLAIM IS REASONABLE

45.     A reasonable consumer's understanding of the term "natural" comports with federal regulators and common meaning. That is, a reasonable consumer understands the term "natural" to mean that none of the ingredients are synthetic, artificial or modified in a laboratory. When the term "natural" is broadened to "All Natural" as Gruma did, there is no question that a reasonable consumer understands the term "All Natural" to mean that none of the ingredients are synthetic, none of the ingredients are artificial and none of the ingredients are the product of laboratory modifications. In other words, Gruma raised the bar by claiming certain varieties of its corn tortilla chips are "All Natural" and represented to consumers that the Products contained only natural ingredients and that none of the components of these Products are artificial or synthetic. In other words, reasonable consumers would believe that the term "All Natural" on the front of food packaging means the food does not contain any ingredients that have been genetically modified.

46.     Consumers, including Plaintiff, lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "all natural" at the point of sale. Consumers would not know the true nature of the ingredients merely by reason the ingredient label; its discovery requires investigation beyond the grocery store. Thus, reasonable consumers must and do rely on food companies such as Gruma to honestly report the nature of a food's ingredients, and food companies such as Gruma intend and know that consumers rely upon food labeling statements in making their purchasing decisions. Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal and California law.

47.     Gruma knew that it made the "All Natural" representations in regard to the Products, as this statement appears on each of the Products' labels. Gruma also knew that these claims were false and misleading because it knew the corn ingredient was synthetic and/or artificial because it was grown from genetically modified seeds and was thus not natural.

48.     Plaintiff purchased Gruma's All Natural Mission® Tortilla Triangles, Gruma's All Natural Mission® Restaurant Style Tortilla Rounds, and Gruma's All Natural Mission® Restaurant Style Tortilla Strips (collectively, the "Products") on multiple occasions for personal use during the Class Period. The last time she purchased the Products was in August 2012 from a Safeway Market located in San Francisco, California.

49.     Plaintiff read the labels on the Products, including the "All Natural" claims before purchasing them.

50.     Plaintiff reasonably relied upon the advertising and other promotional material which were prepared and approved by Defendant and its agents and disseminated through its labeling and advertising media, containing the misrepresentation that the Products are "All

Natural." Plaintiff understood Defendant's statement that the Products were "All Natural" to mean they did not contain any GMO ingredients.

51.     At the point of sale, Plaintiff did not know, and had no reason to know, that the Products were misbranded and not "all natural."

52.     Whether the Products contained GMO ingredients was important to the Plaintiff. If Plaintiff had known the Products were not all natural she would not have purchased the Products, and would not have paid a premium price for them.   Indeed, Plaintiff had other alternatives that lacked such GMO ingredients and Plaintiff also had cheaper alternatives.

53.     After Plaintiff learned that the Products are falsely labeled, she stopped purchasing them.

54.     Plaintiff and members of the Class lost money or property and have been economically damaged by their purchase of the Product because it is not "All Natural."

55.     Defendant has made, and continues to make, All Natural food label claims that are prohibited by California and federal law. Under California and federal law, Defendant's misbranded Products cannot legally be manufactured, advertised, distributed, held or sold. Defendant's false and misleading labeling practices stem from its global marketing strategy. Thus, the violations and misrepresentations are similar across product labels and product lines.

56.     Defendant's labeling, advertising and marketing as alleged herein is false and misleading and designed to increase sales of the Products. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's representations in determining whether to purchase the products at issue.

57.    Defendant should cease advertising the Product as "All Natural" where it contains genetically modified ingredients.

## **CLASS ACTION ALLEGATIONS**

58.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

59.    Pursuant to <u>Civil Code</u> § 1781 and Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **all California residents who purchased Gruma's Mission® All**
>
> **Natural Restaurant Style Tortilla Rounds, Mission® All**
>
> **Natural Restaurant Style Tortilla Strips, and/or Mission® All**
>
> **Natural Restaurant Style Tortilla Triangles for personal use**
>
> **since December 3, 2008.**

Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff. Plaintiff reserves the right to amend the Class definition if further information and discovery indicates that the Class definition should be narrowed, expanded or otherwise modified.

54.    This action is maintainable as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

55.  **Numerosity**: The Class comprises many thousands of persons throughout the State of California. The class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a Class Action will benefit the parties and the Court.

56.  **Commonality:**  The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution of this action. Common questions of law and fact include, but are not limited to, the following:

      a.  Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in California were unfair, deceptive and/or unlawful in any respect, thereby violating Cal. Bus. & Prof. C. §§ 17200, *et seq.*;

      b.  Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in California were unfair, deceptive and/or unlawful in any respect, thereby violating Cal. Bus. & Prof. C. §§ 17500, *et seq.*;

      c.  Whether Defendant violated Cal. Civ. C. §§ 1750, *et seq.* with its practices and representations related to the marketing, labeling and sales of the Products within California;

      d.  Whether the Products are "All Natural";

      e.  Whether the ingredients contained in the Products are "All Natural";

      f.  Whether the claim "All Natural" on the Products' labels and advertising is material to a reasonable consumer;

g. Whether a reasonable consumer is likely to be deceived by a claim that a product is "All Natural" where the product contains or is made from genetically modified ingredients;

h. Whether Defendant's unlawful, unfair, and/or deceptive conduct harmed Plaintiff in the Class, and, if so, the extent of the injuries; and,

i. Whether Defendant was unjustly enriched by its deceptive practices.

57. **Typicality:** Plaintiff's claims, and Defendant's defenses thereto, are typical of the claims of the Class, as the representations made by Defendant are consistent and uniform and are contained in the advertisements and labels that every member of the Class was necessarily exposed to in purchasing the Products. Thus, there exists a presumption that all Class members relied upon said uniform and consistent advertising and representations to their detriment. Additionally, all members of the Class have the same or similar injury (loss of purchase price) based on Defendant's false and misleading marketing and advertising.

58. **Adequacy:** Plaintiff does not have any conflicts with any other members of the Class, and will fairly and adequately represent and protect the interests of the members of the Plaintiff Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

59. **Predominance:** As set forth in detail herein, common issues of fact and law predominate because all of Plaintiff's UCL, FAL and CLRA claims are based on a uniform false and misleading advertising message which all class members were necessarily exposed to: namely, that Products are in fact "All Natural"

60. **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation

would make it impracticable or impossible for Class members to prosecute their claims individually. Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains. The trial and litigation of Plaintiff's claims are manageable.  Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.  The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

**FIRST CAUSE OF ACTION:**
**FOR VIOLATIONS OF CAL. CIV. CODE §§ 1750 *ET SEQ.***
**(By Plaintiff and the Proposed Class Against Defendant)**

61.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and incorporates the same as if set forth at length.

62.     This cause of action is brought pursuant to Civil Code §§ 1750 *et seq.*, on behalf of herself and the Class, consisting of all California residents who purchased at least one of the Products for personal use and not for resale since December 2008.

63.     Plaintiff is an individual who purchased the Products for personal, family or household purposes.

64.     The purchases of the Products by Plaintiff and California purchasers of the Products were and are "transactions" within the meaning of Civil Code §1761(e).

65.     Defendant's marketing, labeling and advertising and sales of the Products within California, that misleadingly claim to be "All natural," violated the CLRA in at least the following respects as set forth in detail above:

    a.  In violation of Civil Code §1770(a)(5), Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have; and

    b.  In violation of Civil Code §1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade, which they are not.

    c.  In violation of Civil Code §1770(a)(9), Defendant advertised the Products with an intent not to sell the Products as advertised; and,

    d.  In violation of Civil Code §1770(a)(16), Defendant represented that the subject of the sale of the Products has been supplied in accordance with a previous representation when it has not.

66.     Defendant knew or should have known that the Products were not "All Natural."

67.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of same.

68.     Defendant's wrongful business practices constitute a continuing course of conduct in violation of the CLRA since Defendant is still representing that the Products have characteristics and abilities which they do not have, and has thus injured Plaintiff and the Class.

69.     Plaintiff and other members of the putative Class have suffered injury in fact

and have lost money as a result of Defendant's false representations. Indeed, Plaintiff and the Class purchased the Products because they believed they were all natural. Plaintiff would not have purchased the products if he had known the Mission® tortilla chips contain GMOs and thus are not all natural.

70. On or about October 22, 2012, pursuant to section 1782 of the CLRA, Plaintiff, by and through counsel, notified Defendant in writing of the particular violations of Section 1770 of the CLRA, and demanded that Defendant take certain corrective actions within the time proscribed by the CLRA for such demands. Rather than agreeing to make any of Plaintiff's suggested changes, Defendant sent Plaintiff's counsel a check in the amount of ten dollars ($10). Plaintiff did not cash the check and does not intend to cash the check. Plaintiff now seeks an award of restitution and damages in accordance with Civil Code § 1782(a) & (d).

71. Plaintiff also seeks damages and is entitled to equitable relief in the form of an order requiring Defendant to make full restitution to California purchasers of the Products of all monies wrongfully obtained as a result of the conduct described above.

72. Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its current advertising and marketing tactics to sell the Products, as described above. Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "All Natural" when they are not. This may include, but is not limited to, an order from the Court that Defendant remove the "All Natural" claims from its packaging and advertising, or that Defendant remove the GMO corn from the Products. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's false and misleading representations.

## SECOND CAUSE OF ACTION:
## UNFAIR AND FRAUDULENT BUSINESS PRACTICES
## IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*
### (By Plaintiff and the Proposed Class Against Defendant)

73.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and incorporates the same as if set forth at length.

74.     This cause of action is brought pursuant to the "unfair" and "fraudulent" prongs of section 17200 of the Business and Professions Code, on behalf of Plaintiff and a Class consisting of all California purchasers of the Products for personal use and not for resale since December 2008.

75.     As alleged above, Plaintiff has standing to pursue this claim because Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Products for her own personal use.  In so doing, she relied upon the false representations in Defendant's advertising and labeling that the products are "All Natural."  The products were not "All Natural" and are therefore useless to Plaintiff. Plaintiff would not have purchased the Products had she known they were not all natural.

76.     In its marketing and advertising, Defendant makes false and misleading statements regarding the uses and benefits of the Products, namely that they are "All Natural."

77.     However, the Products are not all natural because they contain genetically modified corn.

78.     Defendant is aware that the "All Natural" claim it makes about the Products is false and misleading.

79.     The misrepresentations by Defendant are material facts and constitute an unfair and fraudulent business practice within the meaning of <u>Business & Professions Code</u> § 17200, *et seq*.

80.     Defendant's business practices, as alleged herein, are unfair and fraudulent because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims made with respect to the Products as set forth herein.

81.     Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Products have uses and benefits that they do not have.

82.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of <u>Business & Professions Code</u> §§17200, *et seq*.

83.     Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition since Defendant is marketing and selling the Products in a manner likely to deceive the public.

84.     Defendant has peddled, and continues to peddle, its misrepresentations through the Products' packaging, marketing and advertising.

85.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

86.     Plaintiff and the putative class members were misled into purchasing the Products by Defendant's deceptive conduct as alleged above.

87.     Plaintiff and other putative class members were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that the Products were All Natural.

88.     Pursuant to Business & Professions Code § 17203, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its current advertising and marketing tactics to sell the Products, as described above. Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "All Natural" when they are not. This may include, but is not limited to, an order from the Court that Defendant remove the "All Natural" claims from its packaging and advertising, or that Defendant remove the GMO corn from the Products. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's false and misleading representations.

89.     Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false and misleading representations.  Indeed, Plaintiff purchased the Products in reliance on Defendant's false and misleading claims placed on the labels of these products.  Plaintiff would not have purchased these products if he had known the "All Natural" claim was false.

**THIRD CAUSE OF ACTION:**
**UNLAWFUL BUSINESS PRACTICES**
**IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.***
**(By Plaintiff and the Proposed Class Against Defendant)**

90.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and incorporates the same as if set forth at length.

91.     This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to the "unlawful" prong of section 17200 of California's <u>Business and Professions Code</u>, on behalf of Plaintiff and a Class consisting of all persons residing in the State of California who purchased the Products for personal use and not for resale since December 2008.

92.     As alleged above, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Products for her own personal use.  In so doing, she relied upon the false representations in Defendant's advertising and labeling that the products are all natural.  The products were not all natural and are useless to Plaintiff, and she would not have purchased these products if she knew they were not all natural.

93.     In its marketing and advertising, Defendant makes false and misleading statements regarding the characteristics, uses and benefits of the Products, namely that they are "All Natural."

94.     The Products are not all natural because they contain genetically modified corn and/or corn derivatives.

95.     Defendant is aware that the claims that it makes about the Products are false and misleading.

96.     The misrepresentations by Defendant are material facts and constitute an unlawful business practice.

97.     Defendant's business practices, as alleged herein, are unlawful because: (1) it is violating sections 1770(a)(5), 1770(a)(7), 1770(a)(9) and 1770(a)(16) of the CLRA, <u>Civil Code</u>

§§ 1750, *et seq.*; (2) it is violating the Sherman Act, <u>Health & Safety Code</u> §§110100, *et seq.*; and, (2) it is violating <u>Business & Professions Code</u> § 17500.

98.     Plaintiff and other putative class members were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that the Products were 100% Natural.

99.     Pursuant to <u>Business & Professions Code</u> § 17203, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its current advertising and marketing tactics to sell the Products, as described above. Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "All Natural" when they are not. This may include, but is not limited to, an order from the Court that Defendant remove the "All Natural" claims from its packaging and advertising, or that Defendant remove the GMO corn from the Products. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's false and misleading representations.

100.     Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false and misleading representations.  Indeed, Plaintiff purchased the Products in reliance on Defendant's false and misleading claims placed on the labels of these products.   Plaintiff would not have purchased these products if he had known the "All Natural" claim was false.

**FOURTH CAUSE OF ACTION:**
**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF CAL. BUS. & PROF.**
**CODE §§ 17500 *ET SEQ.***
**(By Plaintiff and the Proposed Class Against Defendant)**

101.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and incorporates the same as if set forth at length.

102.    This cause of action is brought pursuant to <u>Business & Professions Code</u> §§ 17500, *et seq*., on behalf of Plaintiff and a Class consisting of all persons residing in the State of California who purchased the Products for personal use and not for resale since December 2008.

103.    <u>Business & Professions Code</u> § 17500 provides that it is unlawful for any person or corporation, or any employee thereof "with intent directly or indirectly to dispose of real or personal property ... or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property... or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading..."

104.    In its advertising and labeling of the Products, Defendant makes false and misleading statements that the Products are "All Natural.

105.    Defendant engaged in the deceptive conduct alleged above, which included deceptive and untrue representations regarding the Products, made to induce the public to purchase the Products.

106.    In its marketing and advertising, Defendant makes knowingly false and misleading statements regarding the ingredients, characteristics, uses and benefits of the Products.

107. Defendant is aware that the claims that it makes about the Products are false and misleading.

108. In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code §§17200, *et seq.*

109. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

110. Plaintiff and the putative class members were misled into purchasing the Products by Defendant's deceptive conduct as alleged above.

111. Plaintiff and other putative class members were mislead and, because the misrepresentations and omissions were uniform and material, presumably believed that Products were "All Natural."

112. Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its current advertising and marketing tactics to sell the Products, as described above. Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "All Natural" when they are not. This may include, but is not limited to, an order from the Court that Defendant remove the "All Natural" claims from its packaging and advertising, or that Defendant remove the GMO corn from the Products. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's false and misleading representations.

113.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false and misleading representations.  Indeed, Plaintiff purchased the Products in reliance on Defendant's false and misleading claims placed on the labels of these products.  Plaintiff would not have purchased these products if he had known the "All Natural" claim was false.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A.    For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating her attorneys as Class counsel.

B.    For an order enjoining Defendant from pursuing the policies, acts, and practices complained of herein;

C.    An order requiring Defendant to pay restitution to Plaintiff and all members of the Class;

D.     For actual damages in an amount to be determined at trial;

E.    For statutory damages;

F.    For punitive damages;

G.    For reasonable attorneys' fees;

H.    For costs of this suit;

I.    For pre- and post-judgment interest on any amounts awarded; and

J.    Providing such further relief as may be just and proper.

Dated: March 11, 2013                    THE LAW OFFICES OF HOWARD W.
                                         RUBINSTEIN, P.A.

                                         By: /s/   Benjamin M. Lopatin
                                                Benjamin M. Lopatin

Attorney for Plaintiff Elizabeth Cox
and the Proposed Class

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: March 11, 2013                    THE LAW OFFICES OF HOWARD W.
                                         RUBINSTEIN, P.A.

                                         By: /s/   Benjamin M. Lopatin
                                             Benjamin M. Lopatin

                                         Attorney for Plaintiff Elizabeth Cox
                                         and the Proposed Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **11th day of March, 2013**, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by CM/ECF.


                                         /s/  Benjamin M. Lopatin
                                         Benjamin M. Lopatin, Esq.